UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| MARTHA RUIZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:13-CV-075-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Martha Ruiz filed this action on March 13, 2013, seeking judicial review of the Commissioner's decision to deny her applications for disability insurance benefits and supplemental security income. The district court transferred the case to the undersigned on July 9, 2013, and summons issued on July 11, 2013. On October 16, 2013, the Commissioner filed an unopposed motion for an extension of time in which to file an answer, and the court granted the motion. After the Commissioner filed her answer, Ruiz filed a motion for an extension of time in which to file her brief, and the court granted the motion. Ruiz filed her brief on January 7, 2014, and the Commissioner filed her brief on January 31, 2014.

The undersigned has considered the parties' arguments under the applicable standard of review and now recommends that the district court reverse the Commissioner's decision and remand Ruiz's case for additional administrative proceedings.

**I.      Statement of the Case**

Ruiz claims she is limited in her ability to work as a result of daily back pain and chronic migraine headaches. (Tr. 148.) She worked as a nurse's assistant at Covenant Medical Center in

Lubbock, Texas, for thirteen years and at a McDonald's prior to that. (Tr. 28–29, 38, 47,168.) Ruiz quit working at the hospital when she injured her back on November 2, 2008, and she thereafter filed her applications claiming that she became disabled on that date. (Tr. 30, 123, 165.) At a hearing held by an Administrative Law Judge (ALJ), Ruiz testified that she injured her back while bathing a patient. (Tr. 30.) She testified that she continues to experience pain in her lower back that radiates to her right leg despite treatment. (Tr. 30, 44.) She described her pain as a "knife stuck" in her back and reported that the pain feels like pins and needles radiating and shooting down her back and leg. (Tr. 44.) Ruiz also testified that she suffers from debilitating migraine headaches two to three times a week. (Tr. 45.)

The ALJ proceeded to the fourth and fifth steps of the sequential evaluation process to reach his decision. (Tr. 15–16.) Once the ALJ reaches the fourth step of the evaluation, he has already determined that the claimant is not engaged in substantial work activity, has severe impairment(s), and does not have impairments considered serious enough to meet a listed impairment in the Commissioner's regulations. 20 C.F.R. § 404.1520(a)(4)(i)–(iii) (2013). Once he reaches the fourth step in the evaluation, he must determine the claimant's residual functional capacity, which is the most the claimant can do despite her impairments. § 404.1520(a)(4)(iv). The ALJ determined that Ruiz could perform light work with a sit/stand option that is non-complex in nature and requires only occasional stopping. (Tr. 47.) Because Ruiz's past work was performed at the medium exertional level, the ALJ determined that she could not return to her past work. (Tr. 18, 47.) He therefore asked a testifying vocational expert whether Ruiz could perform other work that exists in the national economy and specifically asked whether a hypothetical person with Ruiz's demographic characteristics could perform other work. (Tr. 47.) The vocational expert testified that such a

person could work as an office helper and photograph finisher.  *Id*.  Relying on the vocational expert's testimony, the ALJ determined that Ruiz could perform the identified jobs and was therefore not disabled.  (Tr. 20.)

Ruiz brings two arguments in support of her appeal.  She argues that the ALJ should have incorporated limitations caused by her migraine headaches into the hypothetical question he posed to the vocational expert and that he erred at the third step of the sequential evaluation because he failed to properly analyze the evidence and find that her back impairments met the criteria of Listing 101.04.

## II.  Discussion

Ruiz's argument that the ALJ erred at step three of the sequential evaluation has merit.  At the third step of the evaluation process the ALJ compares the claimant's impairment(s) with impairments considered severe enough to disable an individual.  *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000).  Often referred to as "the listings," these impairments are set out in appendix 1 of the regulations.  20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant's impairment(s) match or equal the criteria of one of the listings in appendix 1, the claimant is presumed disabled and qualifies for benefits without further inquiry.  *Loza*, 219 F.3d at 390.  Listing 101.04, the listing at issue in this case, addresses disorders of the spine.  20 C.F.R. pt. 404, subpt. P, app. 1 § 101.04.

Listing 101.04 requires medical findings of a disorder, such as spinal arachnoiditis, spinal stenosis, osteoarthritis, or degenerative disc disease that results in the compromise of a nerve root or the spinal cord.  *Id.*  The ALJ determined that Ruiz did not meet the criteria of Listing 101.04 because there was no evidence of nerve root compression.  (Tr. 14.)

Ruiz argues that the ALJ based this finding on a neurological examination conducted at an emergency room that showed no focal deficits.  The ALJ did, in fact, state that a neurological

examination conducted on July 29, 2011, "showed no gross deficits . . . [t]herefore, as previously indicated, the claimant does not meet listing 101.04." (Tr. 14.) As Ruiz argues, the examination note the ALJ references documents an emergency room visit during which Ruiz complained of a migraine headache and was treated for the same. (Tr. 575.) The examination conducted that day was done to assess Ruiz's cranial nerves and to determine whether nerves in her cranial region were related to her migraine headache. *Id*. As Ruiz argues, it was error for the ALJ to use the emergency room examination note, which documents findings regarding her head, as a basis for his determination that her impairments did not meet the listing for disorders of the spine. Further, as Ruiz argues, it was error for the ALJ to ignore examination notes from her treating physicians that indicate that her back impairment may meet the criteria of Listing 101.04.

Those examination notes show that Ruiz has been diagnosed with degenerative disk disease with facet arthrosis. *See, e.g.*, Tr. 262, 539. Ruiz therefore meets the threshold criterion of Listing 101.04. *See* 20 C.F.R. pt. 404. subpt. P, app. 1, § 101.04 (requiring findings of spinal arachnoiditis, spinal stenosis, osteoarthritis, or degenerative disc disease). The remaining criteria, which is at issue in this case, requires compromise of a nerve root or the spinal cord with medical findings of nerve root compression "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id*.

Examination notes from Ruiz's treating physicians show that she meets the foregoing criteria. In regard to the first criterion, the notes show neuro-anatomic distribution of pain, including evidence of back pain that radiates to Ruiz's right leg, and the Commissioner does not dispute this.

4

(Tr. 243, 257, 259, 268.)  Further, physical examinations show that Ruiz's condition meets the second criterion because there is limitation of motion in her spine.  (Tr. 258, 261, 265, 268.)  The Commissioner does not address in her brief whether there is evidence of limitation in Ruiz's spine; she argues instead that the evidence shows full range of motion in Ruiz's neck, shoulder, biceps, triceps, elbows, and wrists as well as full range of motion in her hips, knees, and ankles.  Listing 101.04, however, specifically requires a finding of limitation of motion in the spine rather than in the upper and lower extremities, and the medical evidence shows limited range of motion in Ruiz's spine.  *Id*.  In regard to the third criterion, which requires a showing of motor loss, there is medical evidence of atrophy in Ruiz's right thigh as well as evidence of muscle weakness, and the ALJ acknowledged that there was evidence of muscle atrophy.  (Tr. 14, 352, 354, 357, 388–89.)  Finally, examination notes from numerous physical examinations indicate positive findings in response to straight-leg raising tests, and the ALJ acknowledged positive results from straight leg tests.  (Tr. 14, 278, 281, 287, 355–57, 389–91.)

Whether the foregoing evidence demonstrates that Ruiz's impairments meet the criteria of Listing § 101.04 is an evidentiary issue, and the ALJ is responsible for resolving conflicts in the evidence.  *Cary v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  The ALJ in this case, however, did not resolve conflicts in the evidence.  He ignored much of the foregoing evidence and failed to explain why evidence he acknowledged, such as the evidence of muscle atrophy and positive straight leg test results, did not meet the criteria of Listing 101.04.

The court is not charged with resolving conflicts in the evidence and cannot weigh the evidence *de novo*.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  The court is charged with determining (1) whether the decision is supported by substantial evidence in the record as a whole,

and (2) whether the Commissioner applied the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The Commissioner's decision at the third step of the sequential evaluation, and consequently his ultimate determination, is not supported by substantial evidence and was not reached through the application of proper legal standards. Because the undersigned recommends remand on these grounds, the undersigned does not reach Ruiz's remaining argument.

### III.    Recommendation

The undersigned recommends that the district court reverse the Commissioner's decision and remand Ruiz's case for further administrative proceedings

### IV.    Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2014); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:       March 4, 2014.

NANCY M. KOENIG
United States Magistrate Judge